

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-13-00243-CV

IN THE INTEREST OF V.U., V.H., A.M.,
U.C., AKA C.U. AND I.N., AKA N.I.N.

On Appeal from the 108th District Court
Potter County, Texas
Trial Court No. 82,505E, Honorable Douglas Woodburn, Presiding

November 20, 2013

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant, A.N.,[1] appeals the trial court's order terminating his parental rights to his children, V.U., V.H., A.M., U.C., and I.N., and appointing the Texas Department of Family and Protective Services as permanent managing conservator of each child. Through three issues, he asserts the evidence is insufficient to support the grounds for termination and contends the best interests of his children are not served by terminating their relationship with him. We will affirm.

---

[1] To protect the parent's and children's privacy, we refer to them by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d) (West 2002); TEX. R. APP. P. 9.8(b).

## Background

A.N. is father to five children. V.U., a female, is the eldest child at 16 years old. V.H. and A.M., males, are 14 and 10, U.C., a female, is 7, and I.N., male, is 3. At the time of the final hearing, the oldest four children were placed with house parents in a children's home and the youngest was in a "fictive kin placement" with friends of the family.[2]

The Department's case was presented through the testimony of two therapists, a SANE nurse and a caseworker. Documents in the clerk's record show the case's procedural history. A.N.'s wife, the mother of the children, was killed in a car crash in 2010. In April 2012, the Department received a report alleging physical abuse of I.N. Further investigation led to statements by the older children that A.N. beat them.[3] In May 2012, the Department received a call from an Amarillo middle school, relating statements made by V.H. concerning conditions in their home, including an allegation his father was abusing V.U. The next day, A.N. agreed to place his children with a family friend while the Department conducted its investigation into the allegations of his sexual abuse of V.U. The day after the placement, a sexual assault exam of V.U. was performed at a hospital. The results were consistent with her statements to the SANE nurse of sexual abuse. A few days later, the four older children were interviewed at The Bridge. In June 2012, the Department filed its petition and the children received their

---

[2] I.N. was too young to be placed with the children's home at the time of removal.

[3] The record does not contain detail regarding the beatings, although the boys' therapist at one point in testimony classified the beatings as "severe."

current placements. A.N. was arrested in April 2013. Charges against him remained pending at the time of final hearing in this case, in June 2013.

The two therapists for the children, the Department caseworker and the children's attorney *ad litem* all recommended that the court terminate A.N.'s parental rights to each of his five children and opined that termination was in the best interest of each child.

At the conclusion of the hearing, the trial court terminated A.N.'s parental rights pursuant to Family Code § 161.001(1)(D) and (E) and found termination of his rights was in the best interests of each child. The trial court also directed that the children remain in placement together "as possible." This appeal followed.

Analysis

Termination of Parental Rights

A parent's rights to "the companionship, care, custody, and management" of his children are constitutional interests "far more precious than any property right." *Santosky v. Kramer,* 455 U.S. 745, 758-59, 102 S. Ct. 1388, 1397, 71 L. Ed. 2d 599 (1982); *In re M.S.,* 115 S.W.3d 534, 547 (Tex. 2003). A termination decree is complete, final, irrevocable, and divests for all time that natural right as well as all legal rights, privileges, duties, and powers except for the child's right to inherit. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). For those reasons, we strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent. *Id.* at 20-21; *In re R.R.,* 294 S.W.3d 213, 233 (Tex. App.—Fort Worth 2009, no pet.).

3

Due process requires application of the clear and convincing standard of proof in cases involving involuntary termination of parental rights. *In the Interest of J.F.C., A.B.C., and M.B.C.*, 96 S.W.3d 256, 263 (Tex. 2002). Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. TEX. FAM. CODE ANN. § 101.007 (West 2009). "While parental rights are of constitutional magnitude, they are not absolute. Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *In re C.H.,* 89 S.W.3d 17, 26 (Tex. 2002).

The Family Code permits a court to order termination of parental rights if the petitioner establishes one or more acts or omissions enumerated under subsection (1) of § 161.001 and also proves that termination of the parent-child relationship is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001; *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976). Though the same evidence may be probative of both issues, both elements must be established and proof of one element does not relieve the petitioner of the burden of proving the other. *Holley,* 544 S.W.2d at 370; *In re C.H.,* 89 S.W.3d at 28.

Termination of Parental Rights Under § 161.001(1)

Under section 161.001(1)(E), parental rights may be terminated if clear and convincing evidence shows that a parent engaged in conduct or knowingly placed his children with persons who engaged in conduct that endangered the children's physical

4

or emotional well-being. This inquiry focuses on conduct of the parent or a person with whom the parent has placed the children. *In re L.C.,* 145 S.W.3d 790, 797 (Tex. App.—Texarkana 2004, no pet.). Additionally, the evidence under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious "course of conduct" by the parent is required*. Id.* Under subsection (E) we look not only at evidence regarding the parent's active conduct, but also evidence showing the parent's omissions or failures to act*. Id.*

"Endanger" means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment. *In re M.C.,* 917 S.W.2d 268, 269 (Tex. 1996) (*citing Tex. Dep't of Human Services v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). *See also In re T.N.,* 180 S.W.3d 376, 383 (Tex. App.—Amarillo 2003, no pet.). Endangerment includes exposure to loss or injury; thus, surroundings or conduct can endanger the well-being of a child without the child suffering actual physical injury. *In re L.C.,* 145 S.W.3d at 796.

Best Interest of the Child Under § 161.001(2)

There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006). Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a) (West 2008). Any number of considerations may affect a court's determination of the best interest of a child. *Holley,* 544 S.W.2d at 371-72. Factors a court may consider include the desires of the child, the emotional and physical needs of the child now and in the future, the emotional and physical danger to

the child now and in the future, the parental abilities of the individuals involved, the programs available to those individuals to promote the best interest of the child, the plans for the child by these individuals, the stability of the home, the acts or omissions of the parent which may indicate that the existing parent-child relationship is not proper, and any excuse for the acts or omissions of the parent. *Id.*

Standard of Review

In reviewing the legal sufficiency of the evidence to support an order terminating parental rights, a court must examine all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005) (*citing In re J.F.C.,* 96 S.W.3d 256, 266 (Tex. 2002)). To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *In re J.F.C.,* 96 S.W.3d at 266. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.* This does not mean that a court must disregard all evidence that does not support the finding, because disregarding undisputed facts that do not support the finding could skew the analysis of whether clear and convincing evidence is present. *Id.* Thus, in conducting a legal sufficiency review in a parental termination case, we must consider all the evidence, not just that evidence which favors the verdict. *City of Keller v. Wilson,* 168 S.W.3d 802, 817 (Tex. 2005).

The standard for reviewing the factual sufficiency of termination findings is whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *In re C.H.,* 89 S.W.3d at 25. Under that standard, we consider whether the disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *In re J.F.C.,* 96 S.W.3d at 266. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

Only one statutory ground is required to terminate parental rights under section 161.001(1). *In re S.F.,* 32 S.W.3d 318, 320 (Tex. App.—San Antonio 2000, no pet.). Therefore, we will affirm the termination order if the evidence is sufficient on any statutory ground on which the trial court relied to terminate the parent-child relationship, together with the best interest finding. *Id.*

Application

In support of his contention the evidence was insufficient to permit termination under either section 161.001(1)(D) or (E), A.N. presents the unusual argument that the testimony did not identify him as "the father" witnesses referred to during their testimony. He states no witness made an in-court identification of him as the father, nor were any exhibits admitted to identify him as the person described in the testimony.

We can see no merit to the argument. While A.N. chose not to testify, the record presents no dispute that A.N. was present at the final hearing, that he is the biological

father of all five children, and that he was the respondent referred to in the Department's pleadings. An interpreter was present to assist A.N. The record reflects no objection asserting any disagreement over his identity as the father and respondent. Counsel for A.N. clearly identified herself as the attorney for A.N., the father involved in the termination proceeding. The trial court addressed A.N. as such. The record is clear the witnesses were referring to the conduct and actions of A.N. as the father of the children.

The substance of the allegations of endangering conduct attributed to A.N. by his children was not disputed at the hearing. And A.N. gives us no reason on appeal why the trial court should not have accepted the allegations as true. The therapists testified without objection to events related to them by the children during therapy sessions. The worst of the allegations, that of sexual abuse of V.U., also was supported by the testimony of the SANE nurse, who testified to her interview and examination of V.U. She related the sixteen-year-old's description of her father's sexual abuse. She told the court V.U. said the abuse began when she was in the seventh grade while her mother was still alive. V.U. did not tell her mother because she was afraid her father would kill her if she told. She told her therapist the abuse continued frequently, happening most often on Fridays and Saturdays after her father had been drinking. The nurse testified to her physical examination of V.U., which showed vaginal trauma, including two healed tears to V.U.'s hymen and a healed transection to her hymen. Her therapist described for the court the emotional detriment suffered by V.U. as a result of A.N.'s conduct.

V.U. also related to her therapist instances of abuse by her father against her mother when she was alive. One incident was so severe that V.U. went to a neighbor to get medical help for her mother. V.U. discussed with her therapist occasions on which

8

her father beat her mother and V.U. took U.C. out of the room so her younger sister would not see it. She also made sure U.C. was not around to see her father drunk. V.U. expressed concerns to her therapist that she would be afraid to leave home for college when that time came because her father might sexually abuse U.C. as well.

The therapist also noted statements made by U.C. She testified U.C. did not mention her father unless directly asked, but that the child had remarked her father did not take care of her and "he drank and stayed out late."

The therapist for the two older boys, V.H. and A.M., testified she saw the boys twelve times, beginning in March 2012. She told the court V.H. told her about his mother's death and the deterioration of his father's behavior. His father started drinking more, and beat him and his siblings. The beatings were frequent and worse when his father had been drinking. When his father was arrested for sexually abusing his sister, V.H. told the therapist, he felt "everything seemed hopeless and he just wished he could die." V.H. evidences "depression, anxiety, symptoms of post-traumatic stress disorder" stemming from his father's care. V.H. also told his therapist his father did "sexual things" to V.U. The therapist voiced concern about V.H. returning to that environment.

The therapist also testified as to her sessions with A.M. He confirmed his father drank to excess and beat the children. A.M. did not want to see his father and actively avoided seeing him. The therapist was also concerned about A.M. returning to his father.

9

The therapist stated both V.H. and A.M. were very "shameful appearing" when discussing their father and his abuse of V.U. She recommended that A.N's parental rights be terminated.

From the evidence of A.N.'s sexual abuse of his oldest child and the detrimental effects of his conduct not only on V.U. but on the emotional well-being of his other children, and of his severe violence toward all his children, all accompanied by abuse of alcohol, the trial court rationally could have formed a firm belief or conviction that A.N. had engaged in a course of conduct that endangered the physical and emotional well-being of his children. The evidence is further strengthened by that showing the emotional detriment to the children of their father's violence toward their mother. Texas courts have found a parent's conduct toward one child may suffice to support termination of his parental rights as to another child, and that endangering conduct need not occur in a child's presence. *See, e.g., In the Interest of S.A.P.,* 169 S.W.3d 685, 703 (Tex. App.—Waco 2005, no pet.). Although I.N. was too young to attend therapy sessions or communicate with Bridge interviewers or caseworkers, based on the evidence the court heard it could have formed the firm belief or conviction that A.N.'s conduct endangered his physical or emotional well-being also.

As noted, the record presents no real dispute over the truth of the children's descriptions of their father's conduct toward them. Evidence contrary to the court's ruling includes some indication that the Department may never have "validated" allegations of physical abuse to the boys, evidence that A.N. was cooperative in working with the Department to the extent he was able, including completing some items in a service plan, and evidence that communication with the Department was hindered

10

because A.N.'s native language is not English.  None of that evidence is so substantial, however, as to preclude the firm belief or conviction that A.N.'s conduct was endangering to his children.

Accordingly, the evidence was legally and factually sufficient to support the trial court's finding that termination was proper under section 161.001(1)(E).  TEX. FAM. CODE ANN. § 161.001(1)(E). Because sufficient evidence supported that ground for termination, we need not address appellant's challenge to the evidence supporting section 161.001(1)(D).  *See In re E.M.N.*, 221 S.W.3d 815, 821 (Tex. App.—Fort Worth 2007, no pet.) (only one termination ground need be proven).  We overrule A.N.'s first issue.

We now consider appellant's challenge to the evidence termination is in the best interests of the children. The Department's caseworker testified to the placement of the four older children at a children's home and I.N.'s in a family friend's home.  The therapists' testimony also bears on the issue of best interest.

V.U. has expressed to her therapist that she wants to stay with her house parents at the children's home.  She is bonded to her house parents, feels safe and supported, and wants her siblings to remain with her.  She is afraid to return to her father because she thinks he will kill her for telling about the abuse.  She is concerned about her sister being in his care, although U.C. never reported any type of abuse.  The therapist told the court V.U. is "parentified" in that she acts like a parent to her siblings, particularly U.C. The therapist opined that U.C. is very dependent on V.U. and suffers

anxiety over separation from her siblings, particularly V.U. U.C. is happy with her placement and wants to be with V.U.

The therapist for V.H. and A.M. told the court they are both doing well, are involved in activities at the children's home, and both accepted "from the very first time that [the therapist] saw them, that they were going to be adopted." The therapist noted that neither V.H. nor A.M. has significant behavioral problems and both have strong "internal resources." The therapist testified both V.H. and A.M. expressed concern that A.N. would kill himself. Consequently, V.H. has mixed feelings about the prospect of termination of his father's parental rights. He has loyalty to his father but realizes A.N. cannot care for the children.

While I.N. is too young to express his desires, the caseworker testified I.N. is doing well and is very bonded with his placement family. I.N. has frequent visits with his siblings and the visits will continue. The siblings are very bonded with each other and wish to remain together. The caseworker emphasized to the court the Department's intention to keep the older children together and continue visits with I.N.

As noted, evidence that supports a ground for termination may also support the court's conclusion on best interest. *In re C.H.,* 89 S.W.3d at 28. That is the case here. The trial court could have seen the evidence of a continuing pattern of violence by A.N., first toward his wife, and then toward his children, and the evidence of sexual abuse of V.U. as strongly suggesting termination is in the children's best interest. Our courts permit a rational inference that a parent's future conduct will comport with his prior conduct. *In re D.S.,* 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.); *Jordan*

*v. Dossey*, 325 S.W.3d 700, 732 (Tex. App.—Houston [1st Dist.] 2010, pet. denied); *see May v. May*, 829 S.W.2d 373, 377 (Tex. App.—Corpus Christi 1992, writ denied).

The children's attorney *ad litem* told the court his multiple visits with the children convince him that termination is in their best interest.

After reviewing all the evidence the trial court heard, we find that clear and convincing evidence supports its finding that termination of A.N.'s parental rights is in the best interests of each of his five children. Accordingly, we find the evidence legally and factually sufficient to support the court's finding on best interests, and overrule A.N.'s remaining issue.

## Conclusion

Having resolved each of A.N.'s issues against him, we affirm the judgment of the trial court.

Per Curiam